ABBOTT et al. v. FIRST NAT. BANK OF CANYON.

(Court of Civil Appeals of Texas. Amarillo. Feb. 15, 1913. Rehearing Denied March 15, 1913.)

1. MORTGAGES (§ 376*)—FORECLOSURE—PROCEEDS—APPLICATION.

In May, 1908, defendant executed a mortgage on a certain survey to plaintiff bank to secure a note for $4,114, and in April, 1908, executed a trust deed on certain lots to others, and on October 5, 1909, executed another trust deed to the bank on the same lots to secure a note for $6,848, and on January 20, 1910, executed another trust deed to the bank on the first-mentioned survey, and also upon the lots to secure a $4,000 note executed by himself and B., who, with reference to defendant, was a surety, but with reference to the bank, which did not know of his relation to defendant, was a principal. The survey was sold, and the proceeds delivered to the bank, which paid the $4,114 note, and applied the remainder upon the other notes, excepting the $4,000 note, and at the same time defendant delivered to the bank two vendor's lien notes as security for a debt due another upon a judgment lien against the survey. Held, that B. as surety on the $4,000 note was entitled to have the proceeds of a sale of the survey credited in part to its payment at the time of the payment of the proceeds to the bank, after payment of the $4,114 note, but was not entitled to a credit of the two vendor's lien notes to the payment of such note, though the bank had released all of the mortgage liens on the survey; the bank having no right to which B. could be subrogated with respect to the vendor's lien notes.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1125–1132; Dec. Dig. § 376.*]

2. MORTGAGES (§ 376*)—PROCEEDS—APPLICATION.

A provision in a trust deed executed on lots that it was security for future advances would not entitle mortgagee to apply the proceeds of the sale of another survey upon which it also held a trust deed as a credit upon the note secured by the first mentioned trust deed as against a surety on a note secured by a trust deed on such survey; the trust deed containing such provision not being a lien upon the survey.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1125–1132; Dec. Dig. § 376.*]

3. MARSHALING ASSETS AND SECURITIES (§ 1*)—DOCTRINE—NATURE OF DOCTRINE.

The doctrine of the application of credits and marshaling assets is not a lien, but a mere equitable right, applicable to prevent injustice when a prior creditor has a lien on two funds, and a less favored creditor has a lien upon only one of them.

[Ed. Note.—For other cases, see Marshaling Assets and Securities, Cent. Dig. § 1; Dec. Dig. § 1.*]

Appeal from District Court, Randall County; Jno. W. Veale, Special Judge.

Action by the First National Bank of Can-

---

yon against G. L. Abbott and others. From a judgment for plaintiff, defendants appeal. Reformed and affirmed.

B. Frank Buie, of Canyon, and Cooper, Merrell & Lumpkin, of Amarillo, for appellants. A. S. Rollins and W. E. Gee, both of Amarillo, G. A. Brandon, of Canyon, and R. A. Sowder, of Lubbock, for appellee.

HENDRICKS, J. J. H. Hall and G. L. Abbott were the owners of survey No. 98, in block B—5; Randall county, Tex., and also the owners of lots Nos. 14 and 15, in block 40, in the town of Canyon, Randall county, Tex., and the following liens, affecting the property, were effectuated upon the same in chronological order, and the First National Bank of Canyon, appellee herein, became the owner of said liens to secure certain indebtedness; upon the 9th day of May, 1908, said Hall and Abbott executed and delivered a mortgage to the said bank on the section 98 (except a small part constituting some railroad right of way) to secure a note of even date with said deed in trust, executed and delivered to said bank, for the principal sum of $4,114. That on April 5, 1909, the same parties executed and delivered another deed in trust to the said lots 14 and 15, in block No. 40, to secure a $3,000 note of that date, payable to certain parties who indorsed the note without recourse, and transferred the lien in writing to William Gray, of Donley county, Tex., and in October, 1911, J. L. Loftin, who had acquired Hall's half interest in the lots, and who had assumed the payment of one-half of the $3,000 note, paid one-half of the amount due on the note to the said William Gray, and the appellee bank, who held a junior lien to that of Gray upon the same lots, at the same time paid the other half of said note and obtained a transfer of one half of the debt and lien to it. For that upon the 5th day of October, 1909, the said Hall and Abbott had executed another deed in trust to the said bank on the same lots to secure it in the payment of the note of $4,114, executed the 9th of May, 1908 (which also had been secured by a deed in trust upon the section of land already mentioned), and the mortgage of the 5th of October, 1909, upon the two lots herein mentioned, secured the payment of another note of even date with said latter mortgage for the sum of $6,847. That on January 20, 1910, G. L. Abbott executed individually another deed in trust in favor of the appellee bank herein, upon his undivided one-half interest in survey No. 98, mentioned above, and also upon his undivided one-half interest in the same lots, 14 and 15, in block 40, to secure another note for $4,000 of that date, payable to the said bank and executed by E. F. Brown, A. E. Brown, and G. L. Abbott, with reference to which A. E. Brown was a principal on the note in so far as the appellee bank is concerned, as was

the said Abbott and the other Brown, although the said Abbott never signed the said note; but, as between A. E. Brown and the said Abbott, appellants herein, the said Brown was a surety upon said note, and the said Abbott was as to him a principal. "That on September 19, 1910, survey No. 98 was sold by J. H. Hall and G. L. Abbott at private sale, and the same paid for to the First National Bank of Canyon, plaintiff herein, and that $11,264 of the cash proceeds of said sale was deposited in said bank, and that said bank paid out of said proceeds the sum of $655, principal and interest, to the state of Texas on said land, and secured a patent therefor, and paid off said $4,114 note, amounting to the sum of $4,281.68, leaving the sum of $6,327.32, one-half of which, $3,163.66, belonged to each J. H. Hall and G. L. Abbott," and the trial court further finds that the said Abbott obtained and delivered to said bank two vendor's lien notes, each for $1,250, which is a second lien on the land, and delivered these notes to the bank as security for a debt due to the Platter Tobacco Company on a judgment lien against said section 98, which the said bank agreed to pay off for the purpose of clearing the title to the land, and which we find from this record was necessary for that purpose to permit the consummation of the trade and to collect the proceeds of said sale. The appellee bank in handling the cash proceeds of the sale of said land to the amount of $11,264 applied a sufficient amount on the $4,114 note to cancel the same with interest, and made an application of credit on the $6,847 note of $3,245.79, and exhausted the balance by application of payments to other notes in said bank, executed and delivered by the said Hall and Abbott, with the exception of the sum of $655, paid to the state of Texas, for the purpose of patenting the said survey 98, which seems to have been a prerequisite for the consummation of the sale.

The appellant A. E. Brown assigns error because the $4,000 note, on which he was sued, was a debt of C. L. Brown and G. L. Abbott, with himself as surety, and that as said note was secured by a second deed of trust on Abbott's half interest in survey 98; that Abbott's half interest in the balance of the cash proceeds, arising from the sale of said land, after the payment and cancellation of the $4,114 note, and the application of the money to patent the land, should have been applied upon said $4,000 note; and that the trial court erred in crediting only $1,200 of said amount in his favor, and also erred in making said credit as of the date of the judgment. He also insists that he was entitled to a credit for the value of G. L. Abbott's interest in the two $1,250 vendor's lien notes, and that the court should have ascertained the value of the same, and ordered said notes sold, and the proceeds credited on the said $4,000 note, the plaintiff hav-

ing released all deed of trust liens from said section of land.

[1] 1. It will be borne in mind that the two Browns and Abbott, who executed the $4,000 note, were principal co-obligors to the bank, although Abbott never signed the paper, though as between Abbott and A. E. Brown, appellants herein, the latter was a surety and the former a principal as to their mutual obligations upon the paper, and the finding of the trial court and the evidence establish that the bank was without knowledge of the suretyship of A. E. Brown; hence the status of the paper in regard to the rights of the bank, with reference to the matter of the application of payments and marshaling of assets at the time when the payment should have been made or assets marshaled will, to a considerable extent, determine the rights of the parties. We are unable to ascertain why the appellee bank can deny the right of A. E. Brown to an application of a partial credit upon the $4,000 note at the time the land was sold and the cash delivered to the bank. It is true that the first lien by Hall and Abbott upon the whole section to secure the $4,114 note, and the lien upon the undivided half of the land by Abbott to secure the $4,000 note, were primarily for the benefit of the bank, but the money paid into the bank represented the principal proceeds of the sale of the land, and the liability to the bank by Abbott as a principal upon the $4,000 note was just as much a liability as upon the other note, and, if the bank released all liens upon the land and with proceeds in its hands directly proceeding from the sale, it would certainly be inequitable to divert the balance, after its first lien upon the whole land had been satisfied, and apply said balance upon different indebtedness, disregarding entirely the second lien securing the $4,000 note, and make no application of payment whatever upon the same, and then sue A. E. Brown, the appellant herein, and obtain judgment against him for the whole principal, interest, and attorney's fees.

It will be remembered that the bank had three different deeds in trust upon the lots and two upon the survey varying some in extent which makes the process of differentiation a little complicated, but the first lien on the survey for the payment of the $4,114 note is not pleaded in this case as a security for future advances or future indebtedness, and as disclosed by the record, measuring the rights of the bank, the bank had no right to make an application of payment upon the $6,800 note afterwards executed by Hall and Abbott, although it is an obligation created before the $4,000 note, which latter, however, was secured by a half interest in the land.

[2] Although the bank pleaded a clause in the deed of trust executed the 5th day of October, 1909 (a lien upon the lots), to the effect that it was security for future advances, but it would not avail the bank and give it the right to apply a credit upon the $6,800 note or upon any other notes as against the rights of A. E. Brown of moneys derived from the sale of the land, for the reason that the deed in trust in which the provision exists was not a lien upon the section; and the second lien upon the land, and the debt secured by it, would certainly have priority over other indebtedness, except, of course, the first debt and lien securing it, which, however, had been canceled. Again, that deed in trust, as a whole, is not in the record, and the provision is not in evidence.

Hence the matter of the application of payments and marshaling of assets is to be solved upon the propositions as indicated before of the rights and obligations of the parties upon the 19th of September, 1910, when the land was sold and the moneys paid into the bank, and this court should decree that which in equity the bank should have performed upon that date. This record shows that as to the bank the parties upon the $4,000 note were principals to the bank; A. E. Brown not having charged the bank with knowledge that he was a surety upon that note, and that Abbott was his principal as to that paper. While the paper was due, it is not pleaded or proven that any obligor upon the note was an insolvent, hence all this court can say in the face of this record that all the bank could be compelled to do upon that date is that it should have treated the obligors on the note as principals, and made the application of credit, with Abbott's money, regarding him from that standpoint. There is nothing shown to us of any equity of A. E. Brown charged to the bank that the parties had any different rights which imposed upon the bank any different legal or equitable duty as to the paper; hence in law or equity all we can say that the bank should have done on that date was the duty of liquidating Abbott's one-third liability on the paper of an application of credit upon the note of Abbott's money in its hands of a one-third of the principal and interest due upon the same, which is the sum of $1,388, leaving a balance due by A. E. Brown then of $2,788.66.

2. As to the right of appellant Brown with reference to the interest of Abbott in the two vendor's lien notes, we are unable to afford any relief by any principle of equity we can invoke for that purpose. The bank is not asserting any lien upon the notes except for the purpose of indemnity on account of the judgment of the Platter Tobacco Company; and the bank has no other lien upon the paper. If the bank's rights as to Abbott and Brown, appellants herein, are to be measured as of the date the land was sold, it had no right to hold the vendor lien paper, for the reason that all it could be compelled to do at that time was to apply the credit

on Abbott's paper of one third of the amount then due by him—A. E. Brown cannot say as against the bank, "You should have held the notes for my benefit as it proceeded from the sale of the land." For the replication would be, so far as this record declares, that it knew nothing of the primary liability of Abbott and the suretyship liability of Brown, and Brown did not take the trouble to inform it of the real status; if the bank had been informed in this matter, a different question entirely might have arisen, and if the bank had liquidated the one third liability of Abbott, which we have decreed, according to this evidence it should have done, that is all that appellant Brown could invoke, unless he had gone further and notified the bank of his rights, and we know of no principle of law requiring the bank to inquire as to the real status of the parties at the time it should have applied. We are unable to subrogate A. E. Brown to any right of the bank relative to the notes. It has none, except to hold the same as an indemnity against the Platter Tobacco Company judgment. Subrogate Brown to what? The surplus in the notes belongs to Abbott, unless we can establish some character of lien upon it for appellant Brown, and we know of no principle of equity, and the appellant has invoked none showing how it may be done. Subrogation is not pleaded. Superficially, it might be pronounced that because the notes are the direct proceeds of the land, some right of Brown's because he is surety upon the debt, will follow and attach to it; but by virtue of what principle? Not by the doctrine of equitable conversion, where in certain cases equity will treat personal property as land and land as personal property, for without arguing it an investigation of the authorities dissipates this theory. Appellant Brown's answer is not in the nature of a creditor's bill, attempting the subjection and condemnation of the notes, or, any surplus in them to his suretyship debt. He only pleads that as to the two vendor lien notes in question that the value of the two notes should be applied to the $4,000 note; but, if appellant Brown obtains the credit upon this note as of the date it should have been made, the fact that the vendor's lien notes have been delivered back to the bank does not give him any greater right upon the notes. He does not claim a lien, at least has not exhibited any process to us or how one is to be worked out for his benefit. The property belongs to Abbott, if the bank had no lien upon it at the time of the sale of the land; and if Brown, on account of failing to notify the bank of his suretyship, has no right to contend that the notes should have been held for his benefit at that time, having obtained the application of credit which the bank should have made at the time, we are unable to subject the value of the surplus, and,

again, the burden to show some value would be on Brown, which is not done.

[3] The doctrine of the application of credits and marshaling of assets is not a lien; it is a mere right in equity to prevent injustice, when a dominant creditor has a lien on two funds and the weaker creditor had a lien upon one of the funds, in order to prevent the former from disparaging the latter; however, when that equity has been met, as in this case, by compelling the bank to do what it should have done, then the equity (not a lien) ceases. All the authorities are persuasive that the credit should have been made as of the date when the money was received by the superior creditor, and appellant Brown recognizes the rule when he complains of the credit the court made as of the date of the judgment, and that it should be made as of the date of the sale of the land. If by any process we could work out any lien by subrogation or otherwise, or could work out any right for Brown in the surplus in Abbott's notes, we could order Abbott's interest in the notes to be sold for Brown's benefit, but, not being able to do so, it is our opinion that the judgment of the trial court should be affirmed, but reformed and amended as follows: "It is ordered, adjudged, and decreed by the court as of the 29th of May, 1912, that the plaintiff, the First National Bank of Canyon, do have and recover of and from the defendants E. F. Brown and G. L. Abbott on the $4,000 note, in the sum of $4,000 principal, $833 interest and $483 attorney's fees, making in the aggregate $5,316; that the said plaintiff, the First National Bank of Canyon, do have and recover of and from the defendant A. E. Brown the sum of $3,272.62, comprehending the principal and interest due by him on said note on the 29th day of May, 1912, and $327.26 as attorney's fees making in the aggregate $3,599.88, and that the deed of trust securing said note be declared a third lien on the above undivided one-half interest in and to said lots Nos. 14 and 15, in block No. 40, in Canyon City, Randall county, Tex., and that for said amounts as against said judgment debtors the judgment creditor herein is decreed a lien on the three vendor's lien notes for $786.66⅔ each, executed by J. E. Puryear and delivered by E. F. Brown to the said judgment creditor herein as collateral security, and that the proceeds of the sale of said land, in accordance with the position of said lien as a fund for the payment of said $4,000 note, be applied upon the judgments as against the three judgment debtors, to the extent and in the amount realized by said sale." And it is further ordered by this court that that part of the trial court's judgment contained in one of the closing paragraphs of same, referring to the seizure and sale of the three vendor's lien notes executed by J. E. Puryear, be ex-

punged from said paragraph, and from said judgment, as follows: "Subject to a credit in his favor of $1,200 for moneys being the amount paid to defendant Abbott out of the sale of survey No. 98, block B—5, which should have been paid on said $4,000 note."

Finding no error in the proceedings and judgment of the court as against G. L. Abbott, all of the assignments of error in his brief are overruled.

It is ordered that the costs of this court upon appeal, including the costs of the transcript, be taxed equally against the appellant G. L. Abbott and the appellee, the First National Bank of Canyon.

Reformed and affirmed.